UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE | ) | |
| COMPANY OF PITTSBURGH, PA., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| VS. | ) | 3:04-CV-2185-G |
| | ) | |
| IF P&C INSURANCE, LTD., | ) | |
| | ) | |
| Defendant. | ) | |


**<u>MEMORANDUM OPINION AND ORDER</u>**


Before the court is the motion of the defendant If P&C Insurance, Ltd. ("If

P&C") to dismiss the complaint of the plaintiff National Union Fire Insurance

Company of Pittsburgh, PA. ("National Union") for lack of personal jurisdiction

and/or on the basis of a prior pending action or, alternatively to stay this action

pending a resolution of the prior pending action.  For the reasons discussed below, If

P&C's motion is granted.

I.  <u>BACKGROUND</u>

This is a coverage dispute between two international insurance companies over

several civil lawsuits arising out of the September 11, 2001, terrorist attacks on the

World Trade Center in New York City. Defendant's Brief in Support of Its Motion to Dismiss or Alternatively Motion to Stay ("If P&C's Motion to Dismiss") ¶ 1. National Union, a Pennsylvania corporation based in New York, is part of the American International Group, Inc. ("AIG"), the nation's largest commercial insurer based in the United States. *Id*. If P&C is a Swedish insurance company with its principal place of business in Stockholm, Sweden. *Id*. ¶ 13. If P&C is the leading property and casualty insurance company in Sweden, Norway, Finland, and Denmark, with approximately $5.6 billion in annual gross income. *Id*. If P&C maintains no offices, assets, or personnel in the United States; however, it insures world-wide operations of international companies, often through local insurance entities. *Id*. ¶¶ 1, 13.

Underlying the instant dispute are claims brought against Burns International Security Services Corporation and Burns International Services Corporation (collectively, "Burns") and Globe Aviation Services Corporation ("Globe"), to whom National Union issued a primary general commercial liability aviation policy. *Id*. ¶ 1. This policy specifically covered airport security operations at issue in the claims against both Burns and Globe (collectively, the "Insureds").[1] *Id*.; *see* Exhibit A,

---

[1]    National Union's policy provides a $50,000,000.00 aggregate limit of liability for the products/completed operations hazard. Brief of Plaintiff in Opposition to Defendant's Motion to Dismiss or Alternatively Motion to Stay ("National Union's Response") at 2. National Union avers that the World Trade Center attack arose out of the Globe's "completed operations" because Globe's

(continued...)

Commercial General Liability Aviation Policy, *attached to* Complaint for Declaratory Judgment, Equitable Contribution and Money Damages ("Complaint").  These lawsuits allege, *inter alia*, that the Insureds were negligent in their provision of airport security services at the Portland, Maine and Boston, Massachusetts airports, where some of the terrorists boarded the airplanes that eventually crashed into the World Trade Center.  If P&C's Motion to Dismiss ¶ 8; National Union's Response at 1-2, 6. If P&C issued an excess/umbrella liability policy to Securitas AB ("Securitas"), a Swedish company which is the ultimate parent company of the Insureds.  If P&C's Motion to Dismiss ¶ 9; *see* Affidavit of Anders Beijer ("Beijer Affidavit") ¶ 4, *attached to* Appendix to Defendant's Brief in Support of Its Motion to Dismiss or Alternatively Motion to Stay ("Appendix to If P&C's Motion to Dismiss") at 2.  The If P&C policy provides excess liability coverage for the world-wide operations of Securitas and its subsidiaries.  If P&C's Motion to Dismiss ¶ 15; *see also* Exhibit B, Insurance Policy Between If P&C and Securitas AB ("If P&C policy"), *attached to* Complaint.  The If P&C policy was issued in Sweden, is written in Swedish, and has a Swedish choice of law and forum selection clause.  If P&C's Motion to Dismiss ¶ 15.  As part of the global liability insurance program with Securitas, If P&C and Securitas arranged local United States coverage through Employers Insurance Company of Wausau

---

[1](...continued)
passenger screening operations for American Airlines were "completed" under the terms of Globe's contract with American Airlines when the hijackers passed through Globe's security screening checkpoints prior to boarding the aircraft.  *Id*. n.3.

("Wausau") for Securitas' subsidiary, Pinkertons, Inc. ("Pinkertons"), and certain affiliated entities. *Id*. ¶¶ 1, 16; Beijer Affidavit ¶ 5, *attached to* Appendix to If P&C's Motion to Dismiss at 2.  Globe, one of the Insureds and a subsidiary of Pinkertons, has its principal place of business in Irving, Texas.  If P&C's Motion to Dismiss ¶ 1; National Union's Response at 6; Affidavit of Marshall Potashner ¶ 3, *attached to* Appendix to If P&C's Motion to Dismiss at 3-4.

After the lawsuits were initiated against the Insureds, the Insureds tendered the claims to National Union, and National Union assumed defense obligations for those claims in accordance with its obligations under the policy.  If P&C's Motion to Dismiss ¶ 10.  The Insureds also tendered the claims to Wausau.  *Id*.  However, because questions remained as to whether Burns and Globe were "insureds" under the Wausau and If P&C insurance policies, and because Wausau and If P&C believe that National Union is the primary carrier, Wausau brought suit in a Delaware state court seeking a declaratory judgment as to coverage with respect to the Insureds and priority and allocation of coverage as between National Union and Wausau.  *Id*.; see also First Amended Complaint for a Declaratory Judgment Action in *Employers Insurance Company of Wausau v. National Union, et al*, No. 03C-01-214 (Del. Super. Ct.) (the "Delaware Action"), *attached to* Appendix to If P&C's Motion to Dismiss at 5-20.

On October 7, 2004, National Union filed this suit seeking a declaration of the rights and obligations of both liability insurance carriers to pay or contribute to the cost of defense and indemnity of their common insureds in the lawsuits arising from the September 11, 2001, terrorist attacks. *See generally* Complaint. The issues in this case concern how defense costs will be allocated and which of the parties' policies is primary and which is excess, or whether they are co-primary.[2] If P&C's Motion to Dismiss ¶ 2. In the instant motion, If P&C now challenges its amenability to the jurisdiction of this court, maintaining that its contacts with Texas do not constitute the kind of contacts that would permit this court to exercise personal jurisdiction over it. *See generally* If P&C's Motion to Dismiss ¶¶ 1-38.

## II. ANALYSIS

### A. The Factual Standard: A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert.*

---

[2]     Additionally, following the initiation of this suit, a Swedish arbitration panel determined that the Burns and Globe were "insureds" under the If P&C policy. *See generally* Complaint ¶ 17; Exhibit C, Arbitral Award, *attached to* Complaint. Wausau, Burns, and Globe commenced negotiations to settle the coverage dispute and to dismiss Burns, Globe, and Pinkertons from the Delaware Action. If P&C's Motion to Dismiss ¶ 11. The settlement is currently in process. *Id*. As a result, the claims between Wausau and National Union with respect to priority and allocation of coverage as to defense and indemnity obligations will be the only issues remaining in the Delaware Action. *Id*.

*denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592

(5th Cir. 1999).  If the district court chooses to decide the matter without an

evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case

for personal jurisdiction.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they

are controverted by opposing affidavits, and all conflicts in the facts are resolved in

favor of the plaintiff.  *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.  In making

its determination, the court may consider affidavits, interrogatories, depositions, oral

testimony, or any combination of recognized discovery methods.  *Allred v. Moore* &

*Peterson*, 117 F.3d 278, 281(5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998);

*Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

B.  The Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident

defendant if (1) the long-arm statute of the forum state permits the exercise of

personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by

the forum state is consistent with due process under the United States Constitution.

*Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).  A defendant is amenable to the

personal jurisdiction of a federal court sitting in diversity to the same extent that it

would be amenable to the jurisdiction of a state court in the same forum.  *Pedelahore v.*

*Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984).  Applying state law, this court

must first determine whether Texas, the forum state, could assert long-arm

jurisdiction.  *Id.*  Because the Texas long-arm statute confers jurisdiction to the limits

of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*,

197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v.*

*Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on*

*other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal

due process inquiry.  *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*,

20 F.3d at 647 n.1; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.041 *et seq.*

(Vernon 1997) (Texas long-arm statute).

## C.  Due Process Requirements

Due process requires the satisfaction of two elements to exercise personal

jurisdiction over a non-resident defendant:  (1) the nonresident must have some

minimum contact with the forum that results from an affirmative act on its part such

that the nonresident defendant could anticipate being haled into the courts of the

forum state; and (2) it must be fair or reasonable to require the nonresident to defend

the suit in the forum state.  *Burger King Corporation v. Rudzewicz*, 471 U.S. 462,

474-78 (1985); *Gulf Consolidated Services, Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d

1071, 1073 (5th Cir.), *cert. denied*, 498 U.S. 900 (1990).  The Due Process Clause

ensures that persons have a "fair warning that a particular activity may subject [them]

to the jurisdiction of a foreign sovereign." *Burger King*, 471 U.S. at 472 (quoting

*Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

1. *Minimum Contacts*

To establish minimum contacts with the forum, a nonresident defendant must

do some act by which it "purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its

laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235,

253 (1958)).  However, the unilateral activity of one asserting a relationship with the

nonresident defendant does not satisfy this requirement.  *Burger King*, 471 U.S. at

474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales de Colombia, S.A. v.

Hall*, 466 U.S. 408, 417 (1984) (citing *Kulko v. California Superior Court*, 436 U.S. 84

(1978); *Hanson*, 357 U.S. at 253).  In determining whether the exercise of

jurisdiction is appropriate, the Supreme Court has focused less on presence in the

forum state as a means to establish jurisdiction and looked increasingly to whether a

defendant's contacts with the forum state make it reasonable to require the defendant

to defend the particular suit in that forum.  *Quill Corporation v. North Dakota*, 504

U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident

defendant:  specific jurisdiction and general jurisdiction.  Specific jurisdiction exists if

the cause of action is related to, or arises out of, the defendant's contacts with the

forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). General jurisdiction, on the other hand, may be found when the nonresident's contacts with the forum are "continuous and systematic," even though the claim is unrelated to those contacts. *Helicopteros Nacionales*, 466 U.S. at 415-16.

Under either a specific or general jurisdiction analysis, however, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id.* at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987)

(citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry -- "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

a.  <u>Specific Jurisdiction</u>

In the case at bar, National Union argues that If P&C had sufficient minimum contacts with Texas for this court to exercise personal jurisdiction over If P&C. National Union's Response at 15.  Specifically, National Union contends that If P&C is subject to personal jurisdiction in this court because National Union's complaint for declaratory judgment "arises out of" If P&C's contract of insurance with Globe, a Texas resident.  *Id*.

If P&C, on the other hand, argues that it lacks sufficient minimum contacts with Texas to be subject to personal jurisdiction in this court.  If P&C's Motion to

Dismiss ¶¶ 24, 25.  If P&C maintains that the underlying injuries which gave rise to the claims against the Insureds occurred in New York City, and the airport security services at issue were provided in Maine and Massachusetts.  *Id*. ¶ 25.  Additionally, If P&C states that the present case does not arise out of activities it directed at Texas: the If P&C policy was not issued in Texas, no premiums were collected in or paid from Texas, and none of the parties to the policy are Texas residents.  *Id*.

Even when all of National Union's factual allegations are taken as true, National Union has failed to establish a *prima facie* case that If P&C purposefully availed itself of the privilege of conducting business within Texas.  See *Burger King*, 471 U.S. at 475.  The fact that a nonresident has entered into a contract with a resident of the forum does not automatically establish sufficient minimum contacts with that forum.  *Id.* at 478; *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 872 (5th Cir. 1999) (citations omitted); *Stuart*, 772 F.2d at 1193.  In determining whether a contractual relationship does establish sufficient minimum contacts, the Fifth Circuit has repeatedly looked to the following language from the Supreme Court's decision in *Burger King*:

> It is these factors -- prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing -- that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum.

*Burger King*, 471 U.S. at 479.  When these factors are taken into account, National

Union has failed to show that If P&C purposefully established minimum contacts

with Texas.

The facts present in the instant case are analogous to the situation in *Delta*

*Brands Inc. v. Danieli Corporation*, 99 Fed. Appx. 1 (5th Cir. 2004).  In *Delta Brands*,

the court determined that the Danieli Corporation was not subject to specific

jurisdiction in Texas.  *Id*. at 7.  Delta, a Texas corporation, contacted Danieli & C, an

Italian company, through its North American affiliate, Danieli Corp. about the

possibility of subcontracting on a project.  *Id*. at 3.  As a result, Delta sent a

delegation to Italy where Danieli & C executed a confidentiality agreement with

Delta.  *Id*.  The subcontracting agreement, however, between Danieli & C and Delta

never materialized.  *Id*.  In reaching its conclusion that Danieli Corporation was not

subject to personal jurisdiction in this court, the Fifth Circuit explained:  "It is far-

fetched indeed to assert that Danieli Corp. should have anticipated being haled into

Texas court in connection with a contract it did not know about, that was executed in

Italy by its affiliate, and that was allegedly breached by its affiliate in Italy."  *Id*. at 7.

In the instant case, like the defendant in *Delta Brands,* If P&C could not have

anticipated being haled into Texas court as a result of issuing the If P&C policy.  If

P&C negotiated and entered into the policy with Securitas in Sweden; no

negotiations, or any dealings, between the parties took place wholly in Texas.[3]

Further, Globe did not participate in the negotiations, sign the contractual

agreements, or pay insurance premiums to If P&C.  Moreover, If P&C's position is

strengthened by the fact that If P&C and Securitas arranged for Wausau, a local U.S.

carrier, to provide initial coverage for the U.S. operations and the activities of

Securitas and its affiliates.  *See* If P&C's Motion to Dismiss ¶¶ 16, 29.

Additionally, although a Swedish arbitration panel has found that the If P&C

policy with Securitas, a Swedish company, extends to the subsidiary Globe, *see*

*generally* Exhibit C, Arbitral Award, *attached to* Complaint, this fact alone is not

enough to justify a finding that If P&C has purposefully availed itself of the privilege

of conducting activities in Texas.  Globe is a subsidiary of Burns, which in turn is a

subsidiary of Pinkertons, which in turn is a subsidiary of Securitas:  in effect, Globe is

the corporate "great-grandchild" of Securitas.  The Fifth Circuit has consistently held

that personal jurisdiction over a nonresident corporation may not be based solely

upon the contacts with the forum state of another corporate entity with which the

defendant may be affiliated.  See *Freudensprung v. Offshore Technical Services, Inc.*, 379

---

[3]     The significance of any alleged minimum contacts in this case is severely
diminished by the fact that the If P&C policy specified that it was to be governed by
Swedish law and that the material portions of the policy were not purposefully
directed at Texas.  See *Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327,
345 (5th Cir. 2004); *Holt*, 801 F.2d at 778 (discussing relevance of contract's choice-
of-law provision and place of performance to minimum contacts analysis) (citing
*Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983), *cert.
denied*, 466 U.S. 962 (1984)).

F.3d 327, 346 (5th Cir. 2004); see also *Hargrave v. Fireboard Corporation*, 710 F.2d 1154, 1159 (5th Cir. 1983) ("Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business [in the forum state] . . ."). Given this precedent, this court is clearly unable to assert jurisdiction over Securitas based solely on the presence in Texas of the subsidiary (Globe) of a subsidiary (Burns) of a subsidiary (Pinkertons). Consequently, it would be even more tenuous for this court to assume personal jurisdiction over Securitas' insurer based solely on the presence of the insured's non-party corporate great-grandchild which -- coincidentally -- happens to be a resident of Texas. See, *e.g.*, *Malaysia British Assurance v. El Paso Reyco, Inc.*, 830 S.W.2d 919, 921 (Tex. 1992) (concluding that the defendant had not purposely established minimum contacts with Texas and reasoning that a "twice-removed contact with Texas" was insufficient to establish jurisdiction).

Based on these facts concerning the quality and nature of If P&C's activity (or lack thereof) in Texas, National Union has not demonstrated that If P&C has purposefully directed its activities toward Texas, that it has purposefully availed itself of the benefits and protections of Texas law, or that it could reasonably foresee being haled into court in Texas.

b.  General Jurisdiction

For the court to exercise general jurisdiction, a foreign corporation must have continuous and systematic contacts with the forum state.  *Helicopteros*, 466 U.S. at 414-17.  Cases involving general jurisdiction suggest that these contacts must be very substantial.  *Id*. at 416-19 (no general jurisdiction where defendant traveled to Texas to negotiate sale of helicopters, regularly purchased helicopters in Texas, and sent pilots for training to Texas); *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 447-49 (1952) (jurisdiction appropriate in Ohio court where cause of action did not arise out of Ohio contacts but the defendant carried on a substantial part of its business in Ohio); *Dalton v. R&W Marine, Inc.*, 897 F.2d 1359, 1362-63 (5th Cir. 1990) (no general jurisdiction over defendant which chartered boats to Louisiana subsidiary resulting in almost 13% of parent's revenues, advertised in Louisiana, purchased vessels at marshal's sales; no general jurisdiction over defendant which sold fuel to Louisiana purchasers and traveled into Louisiana territorial waters); *Bearry*, 818 F.2d at 375-76 (no general jurisdiction over company that advertised in Texas as part of a national campaign and sold goods to Texas distributors of its products via contracts entered into and executed in Kansas).

National Union contends that If P&C has systematic and continuous contacts with Texas because If P&C has purposefully availed itself of the benefits of conducting business in Texas.  National Union's Response at 16.  Specifically,

National Union argues that:  (1) If P&C contracted in 2001 to insure Globe, a Texas resident, for its airport operations at the Dallas-Fort Worth ("DFW") airport, and (2) If P&C issued surplus lines insurance policies to Texas residents continuously for a period of at least three years.[4]  *Id*.; *see also* National Union's Response at 8-10.  The court concludes, however, that National Union's arguments are without merit.  The facts show that If P&C's business in Texas has been, at best, minimal.  If P&C has no office in Texas, nor does it own any property in the state.  If P&C's Motion to Dismiss ¶ 34.  If P&C does not have any Texas employees or agents, nor does it have any financial accounts in Texas.  *Id.*; see *Bearry*, 818 F.2d at 376 (concluding, on basis of facts analyzed there, that defendant was not "doing business" in Texas so as to subject it to general jurisdiction).  In fact, the only business If P&C conducted in Texas was surplus lines insurance in 2002 and 2003.  IF P&C's Motion to Dismiss ¶ 34.  This business accounted for only a small percentage of If P&C's overall world-wide revenues.[5]  *Id*.

---

[4]     An "eligible surplus lines insurer" is defined as "[a]n unlicensed insurer allowed by the commissioner to do business in Texas as a surplus lines insurer."  28 TEX. ADMIN. CODE § 15.2(2) (West 2005).  "'Surplus lines insurance' means insurance coverage . . . for a subject that is resident, located, or to be performed in this state . . . ."  TEX. INS. CODE § 981.002(4)(a) (Vernon Supp. 2004-05).

[5]     According to If P&C's counsel, If P&C's business in Texas was limited solely to surplus lines insurance and it collected $8,100,000.00 in premiums on policies issued by If P&C in the State of Texas during the year 2003.  *See* Affidavit of Antti Salenius ("Salenius Affidavit") ¶ 5, *attached to* Appendix to If P&C's Motion to

(continued...)

Although If P&C's surplus lines insurance activity may indeed suggest purposeful conduct aimed at this forum, the facts show that If P&C's business in Texas has only been sporadic and minimal.  Indeed, the fact that If P&C is subject to service of process in Texas because it registered with the Department of Insurance as a surplus lines carrier is wholly separate from the question of whether If P&C has maintained substantial contacts with the state sufficient to subject If P&C to general jurisdiction in Texas.  National Union has presented no persuasive evidence suggesting that "the quality and nature of the activity with relation to the forum state," see *Mississippi Interstate Express*, 681 F.2d at 1006, justifies the assumption of jurisdiction over If P&C for activities unrelated to any surplus lines policies issued by If P&C covering risks in Texas.[6]  In support of its motion, If P&C cites this court's

_____

[5](...continued)
Dismiss at 21-23.  Nevertheless all of If P&C's surplus lines policies placed in Texas were through its marine and energy division.  *Id.*  If P&C sold this division in January 2004 and, as a result, no longer sells surplus lines insurance in Texas or anywhere else in the United States.  *Id.*

[6]     National Union argues that If P&C has anticipated being "haled into court" in Texas and it cannot be a surprise to If P&C that it was sued in Texas for its refusal to meet its obligations under a policy of liability insurance it issued covering Globe for its operations in Texas.  National Union's Response at 11-12.  Specifically, National Union points to the fact that the Texas Insurance Code required If P&C to maintain a registered agent for service of process in Texas.  TEX. INS. CODE § 804.103(b) (Vernon Supp. 2004-05).  Additionally, as a further condition of engaging in "the business of insurance," If P&C was required to maintain a trust account in a United States bank for the protection of its insureds.  TEX. INS. CODE § 981.058 (Vernon Supp. 2004-05); *see also* Appendix to Brief of Plaintiff in

(continued...)

opinion in *British Aviation Insurance Group v. American Eurocopter Corporation*, No. 3:96-CV-0392-G, 1997 WL 118425 (N.D. Tex. Mar. 12, 1997).  If P&C's Motion to Dismiss ¶ 35.  In *British Aviation*, this court rejected a claim that Caledonian Insurance Group, Inc. was subject to general jurisdiction where Caledonian had two clients in Texas, had traveled to a convention in Texas, had sent certificates of insurance to several Texas entities, and its president held a Texas insurance license. *Id*. at *5.  This court reasoned that the determination of whether there are contacts sufficient to assert general jurisdiction "is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Id*. at *4 (quoting *Mississippi Interstate Express*, 681 F.2d at 1006).  Even though the Texas clients and the Texas insurance license indicated that Caledonian had engaged in purposeful conduct aimed at Texas, the business contacts with Texas were only sporadic and minimal. *Id*. at *5.  The revenue generated from Caledonian's clients in Texas "amounted to only one-half of one percent of its total revenue." *Id*. (citation omitted).  Here, If P&C's revenue derived from Texas, like Cadedonian's in *British Aviation*, amounted to only 0.15% -- a minimal percentage -- of If P&C's overall premiums in 2003 and even less in 2002.

---

[6](...continued)
Opposition to Defendant's Motion to Dismiss or Alternatively Motion to Stay at 151, 204.  If P&C does not contest the fact that it has registered with the Texas Department of Insurance, that it has made all the filings required, and that it has identified brokers.  Defendant's Reply Brief in Support of Its Motion to Dismiss or Stay at 6.

If P&C's Motion to Dismiss ¶ 36.  Because the percentage of revenue derived from Texas by If P&C is clearly less than that received by Caledonian in *British Aviation*, the argument for exercising general jurisdiction in this case is even weaker than it was there.  See also *International Turbine Service, Inc. v. Lovitt*, 881 S.W.2d 805, 809-10 (Tex. App.--Fort Worth 1994, writ denied) (although non-resident defendants maintained a Texas insurance license, there was no general jurisdiction over them because only 0.2% of defendants' business was conducted in Texas); cf. *Holt Oil*, 801 F.2d at 779 (that a "great deal of business" was transacted in Texas by non-resident defendant weighed in favor of exercising of general jurisdiction over him).

Accordingly, National Union has not established that If P&C's registration as a provider of surplus lines policies with the Texas Department of Insurance gives If P&C sufficient presence in Texas to subject it to suit in Texas for claims not arising from any policy sold under that registration.  Since If P&C has only minimal and sporadic contacts with Texas, is not licensed to sell insurance in Texas, has no physical presence in Texas and no Texas employees or agents, the court concludes that it cannot exercise general jurisdiction over If P&C.

2.  *Fair Play and Substantial Justice*

Both minimum contacts and fairness are required to assert personal jurisdiction over a nonresident defendant.  See *Burger King*, 471 U.S. at 474-78; *Gulf Consolidated Services*, 898 F.2d at 1073-75.  Because this court concludes that If P&C did not have

sufficient minimum contacts with Texas for this court to maintain personal

jurisdiction over If P&C, it is not necessary to determine whether exercising that

jurisdiction -- despite If P&C's lack of minimum contacts -- would comport with

notions of fair play and substantial justice.  See *Helicopteros*, 466 U.S. at 418-19

(reversing a finding of personal jurisdiction after determining that there were

insufficient minimum contacts and without determining whether exercising

jurisdiction would comport with traditional notions of fair play and substantial

justice); *Wilson*, 20 F.3d at 650 n.7 (same).

## III.  CONCLUSION

In determining whether a nonresident corporation should be required to

defend a suit in Texas arising out of contacts claimed between the nonresident and

Texas, "'each case must be decided on its own facts.'"  *Hydrokinetics*, 700 F.2d at 1028

(citation omitted).  Based on the facts in this record, an exercise of jurisdiction over If

P&C would be inconsistent with the requirements of due process.  Accordingly, If

P&C's motion to dismiss for lack of personal jurisdiction is **GRANTED**.  This case is

**DISMISSED** for lack of personal jurisdiction.

**SO ORDERED**.

July 13, 2005.

_____
A. JOE FISH
CHIEF JUDGE